UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

In re:   SHANNON VIDEO, INC.,                    :
       a Georgia corporation,                    :          Chapter 11
                                                :          Case 14- 43141
                                                :
       Debtor.                                   :
_____ :

SHANNON VIDEO, INC.,                             :
                         Movant  :
v.                                               :
                                                :
JANET GABLER BEAROFF and                         :
                                                :
EAST COAST NEWS CORP,                            :
INTERNATIONAL VIDEO                              :
DISTRIBUTORS, LLC,                               :
                                                :
            Respondents                         :

## MOTION FOR AUTHORITY TO USE CASH COLLATERAL ON AN INTERIM AND ONGOING BASIS, TO PROVIDE ADEQUATE PROTECTION, AND FOR EXPEDITED HEARING ON USE OF CASH COLLATERAL ON AN INTERIM BASIS AND ADEQUATE PROTECTION

COMES NOW SHANNON VIDEO, INC., Debtor and Movant herein, and hereby files this motion seeking (i) authority to use cash collateral on an interim and ongoing basis and to provide adequate protection and (ii) an expedited hearing on use of cash collateral on interim basis and adequate protection, respectfully showing the following:

1.

The above-styled bankruptcy case (the "Chapter 11 Case") was commenced by the filing by Debtor of a voluntary petition for relief in this Court under Chapter 11 of the Bankruptcy Code 11 U.S.C. §§1 101 *et seq.* on December 29, 2014 ("Petition Date").

2.

Debtor is a debtor-in-possession in the Chapter 11 Case, and continues to operate its business. The Debtor is operating its business and managing its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtor is a privately held corporation, organized under the laws of the State of Georgia. Debtor currently operates one retail store at 5561 New Calhoun Highway, Rome, Georgia 30165. The Debtor's retail business (the "Business") is a fully-functional going concern that provides services to meet the needs of its customers.

4.

On or about December 10, 2009, Debtor executed a Promissory Note in favor of Janet Gabler and Kenneth Gabler in the original principal amount of $450,000.00 (the "Gabler Note")[1]. The Gabler Note is secured, *inter alia,* by that certain Commercial Security Agreement, dated December 10, 2009 (the "Gabler Security Agreement") and that certain Uniform Commercial Code Financing Statement indexed by the Georgia Uniform Superior Courts Clerk's Cooperative in File No. 057-10-95 (the "Gabler Financing Statement") (the Gabler Note, the Gabler Security Agreement and the Gabler Financing Statement are hereinafter collectively referred to as the "Gabler Loan Documents"). The Debtor's obligations to Gabler Bank under the Gabler Note are secured by a first-priority lien on all inventory[2], chattel paper, accounts, equipment and general intangibles of the Debtor (collectively, the "Gabler Collateral") pursuant to the Gabler Loan Documents.  True and correct copies of the Gabler Loan Documents are attached hereto as Exhibit 1.

---

[1] Upon information and belief, the Gabler Note is currently held solely by Janet Gabler Bearoff.
[2] The Debtor believes that Gabler's interest in Debtor's inventory and the proceeds thereof is subordinate to the purchase money security interest of East Coast in inventory sold to the Debtor by East Coast and the proceeds thereof.

5.

On or about February 7, 2012, Debtor executed a Personal Guaranty Agreement and Promissory Note in the original principal amount of $41,661.86 (hereinafter referred to as the "East Coast Loan Documents") in favor of East Coast News Corp, International Video Distributors, LLC ("East Coast"). East Coast has caused to be filed that certain Uniform Commercial Code Financing Statement indexed by the Georgia Uniform Superior Courts Clerk's Cooperative in File No. 057-2011-001685 (the "East Coast Financing Statement"). True and correct copies of the East Coast Loan Documents and the East Coast Financing Statement are attached hereto as Exhibit 2.

6.

By virtue of the East Coast Loan Documents and the East Coast Financing Statement, East Coast has a second priority security interest in all inventory of the Debtor and the proceeds thereof (collectively, the "East Coast Collateral"). The Debtor believes that East Coast's security interest in inventory sold to the Debtor by East Coast News Corp., and the proceeds thereof, primes the security interest of Gabler in such collateral under state law.

7.

At the time of commencement of the Chapter 11 Case, Debtor was generating monthly revenues of approximately $45,000.00 which revenues are, or may be, cash collateral as defined in Bankruptcy Code §363(a) ("the Cash Collateral.")

8.

Debtor requires the use of the Cash Collateral in the ordinary course of the continued operation of its business. Debtor seeks Court authorization, pursuant to 11 U.S.C. §363, to use Cash Collateral to pay its reasonable and customary expenses for the operation of its business.

9.

A Consolidated Monthly Operating Statement for 2014 indicating monthly expenses and cost of the Business is annexed hereto as Exhibit 3 (the "Budget").

10.

Debtor requires the immediate use of Cash Collateral on an interim basis for the payment of ordinary expenses incurred on a daily basis that are essential to the ongoing operation of the Business, which expenses must be paid from Cash Collateral, and an expedited hearing on the use of Cash Collateral is required to obtain approval of same.

11.

Without the use of Cash Collateral, Debtor will be unable to operate the Business and will be unable to effectively reorganize.

12.

Debtor proposes that this Court allow the Respondents replacement liens on the post-petition receivables of Debtor to the extent and validity of each of the Respondents' respective pre-petition liens on cash collateral.

13.

The Debtor also requires the continued use of certain Collateral in order to continue the ongoing operation of the Debtors' businesses. Without the use of such Collateral, the Debtor's operations would be substantially impaired.

14.

It is in the best interest of the Chapter 11 estate that Debtor be permitted to utilize Cash Collateral and to make adequate protection payments to the Respondents as provided

in the Budget or under such other terms and conditions as this Court may determine to be just and equitable.

WHEREFORE, Debtor prays that this Court

A.    Set this matter for an expedited hearing to determine the terms and conditions for an interim order authorizing the use of Cash Collateral and providing for payment of adequate protection;

B.    Set this matter for a final hearing to determine the terms and conditions for an order authorizing Debtor's use of Cash Collateral on an Interim Basis and the payment of adequate protection on an ongoing basis;

C.    Grant Debtor such other and further relief as the Court determines to be just and equitable.

This 30th day of December, 2014.

Counsel for the Debtor and Movant

By:   /s/ J. Nevin Smith
      J. Nevin Smith
      Georgia Bar No. 661110
      jsmith@smithconerly.com

Smith Conerly LLP
402 Newnan Street
Carrollton, GA 30117
770-770-834-1160 (Telephone)
770-770-834-1190 (Facsimile)

EXHIBIT "1"

Gabler Loan Documents

## NON-NEGOTIABLE PROMISSORY NOTE

$450,000.00

December 0ᵗʰ, 2009                                                    Rome, Georgia

FOR VALUE RECEIVED, the undersigned, **SHANNON VIDEO, INC.,** a Georgia corporation, and **HIGH FIVE INVESTMENTS, LLC,** a Georgia limited liability company (referred to collectively as "Makers"), jointly and severally promise to pay to **JANET GABLER and KENNETH GABLER** (referred to as "Gablers") the principal sum of **FOUR HUNDRED FIFTY THOUSAND AND NO/100 ($450,000.00) DOLLARS,** in lawful money of the United States, payable to the Gablers at 1203 Tullamore Circle, Chester Springs, Pennsylvania 19425, or such other place or to such other person as the holder hereof may from time to time designate in writing, together with interest from date on said principal sum or so much thereof as may, from time to time, be outstanding hereunder.

Interest shall accrue on the unpaid principal balance at the rate of Two and 56/100 Percent (2.56%) per annum. The principal balance of this Note shall conclusively be deemed to be the unpaid principal balance appearing on holder's records unless such records are manifestly in error.

This Note shall be paid in eighty-one (81) consecutive monthly installments of principal and interest in the amount of **Six Thousand Fifty-Five and 28/100 ($6,055.28) dollars** each, commencing on **January 10, 2010,** and continuing on the tenth (10th ) day of each and every month thereafter, with a final payment of any and all accrued but unpaid interest and the outstanding principal due on **September 10, 2017,** unless required to be sooner paid pursuant to the provisions set forth herein or in the Loan Documents, as hereinafter defined (the "Maturity Date"). If any payment of principal or interest on this Note shall become due on a Saturday, Sunday or legal holiday under the laws of the State of Georgia, such payment shall be made on the last business day preceding the due date.

Payments as made shall be applied first to the payment of any applicable default charges, then to accrued and unpaid interest on the outstanding principal sum, and the balance of said payment shall be applied to principal. Principal, interest, and default charges shall be payable in lawful money of the United States of America.

Maker may make partial prepayments of amounts owing under this Note at any time and from time to time. Any partial prepayment shall be in an amount equal to the next scheduled monthly payment or any multiple thereof, and Maker shall designate the month or months for which such partial prepayments are made. Nothing herein is intended to preclude Maker from prepaying the full outstanding balance of principal and accrued interest due under the Note. Any amounts repaid hereunder may not be re-borrowed.

This Note is non-negotiable.

Initial _SHC_

This Note is secured by a second position Security Deed and Assignment of Leases and Rents executed by High Five Investments, LLC, to the Gablers, pursuant to which High Five Maker has conveyed all of its interest in certain real property located in Floyd County, Georgia, and the improvements located thereon at 5561 New Calhoun Highway, Rome, Floyd County, Georgia (the "Property"), subject only to that certain Deed to Secure Debt and Security Agreement by High Five Investments, LLC to Bank of North Georgia dated October 6, 2005, recorded in Deed Book 1976, Page 981 of the Floyd County Deed Records, and that certain Assignment of Rents and Leases by High Five Investments, LLC to Bank of North Georgia dated October 6, 2005, recorded in Deed Book 1976, Page 986 of the Floyd County Deed Records (said Deed to Secure Debt and  Assignment of Leases and Rents to Bank of North Georgia being collectively referred to as the "First Position Security Instruments").It is further secured by Commercial Security Agreements of Shannon Video, Inc., Arrigato, Inc. and Coliseum Entertainment, Inc., and Stock Pledge Agreements executed by Susan Craton.  The Stock Pledge Agreements, Commercial Security Agreements, Personal Guarantees, Hypothecation Security Deed and Assignment of Leases and Rents and the Stock Purchase and Sale Agreement are collectively referred to as (the "Loan Documents").  Should any installment of principal or interest or any other sums as required by this Note not be paid in full when due, and should such failure continue for a period of ten (10) calendar days from the due date thereof, or should there occur a "Default" or an "Event of Default" under and as defined in the Loan Documents or the First Position Security Instruments, (hereinafter referred to as an "Event of Default" for purposes of this Note), then and in any such event the entire unpaid principal sum evidenced by this Note, together with all interest accrued thereon, shall, at the option of the holder and without notice or demand to the undersigned, become due and may be collected forthwith, TIME BEING OF THE ESSENCE OF THIS NOTE.

DEFAULT AND CURE

Notwithstanding any other provision of this Note or of the Stock/Membership Unit Redemption Agreement, Unconditional Guaranty of Payment and Performance, Deed to Secure Debt, Stock Pledge Agreements, Security Agreements, and Assignment of Rents (the "Related Documents"), with respect to any default or event of default under this Note or under the Related Documents (other than the failure to timely pay any and all sums required to be paid under the Promissory Note), Gabler may not take any action to enforce any right or remedy under this Note or any of the Related Documents until the expiration of ten (10) days from receipt by Shannon Video, High Five, and Craton of notice of such default or event of default, specifying in detail the nature thereof, and the failure of Shannon Video, High Five or Craton, as the case may be, to cure and remedy such default.

It is further agreed that the failure of the holder to exercise this right of accelerating the maturity of the debt, or any other indulgence granted from time to time, shall in no event be considered as a waiver of such right of acceleration or estop the holder from exercising such right during the pendency of any such Event of Default hereunder or under the Loan Documents or the

Initial SMC

First Position Security Instruments in the event of any subsequent Event of Default hereunder or thereunder.

Any and all notices, elections, demands, requests and responses thereto permitted or required to be given under this Note shall be in writing, signed by or on behalf of the party giving the same, and shall be delivered personally, by recognized overnight courier service, or, if mailed, sent by certified United States Mail, postage prepaid, to the other party at the address of such other party as set forth below or at such other address within the continental United States as such other party may designate by notice given in accordance herewith (provided, however, that no notice of change of address shall be effective until the date of receipt thereof). The effective date of such notice shall be the sooner to occur of the date of actual receipt, regardless of the method of delivery, or the date which is three (3) business days after the date on which the notice is postmarked by the United States Postal Service. Rejection or other refusal to accept or inability to deliver because of changed address of which no notice was given as prescribed herein shall not affect the effective date of such notice, demand, request or communication sent as aforesaid. Delivery to a party or to any officer or member, of such party at the designated address shall constitute effective delivery for purposes hereof. Any such notice, election, demand, request, or response shall be addressed as follows:

As to Makers: Shannon Video, Inc.
P.O. Box 1366
Rome, Georgia 30162-1366

High Five Investments, LLC
P.O. Box 1366
Rome, Georgia 30162-1366

With a copy to: John G. Haubenreich
Seacrest, Karesh, Tate & Bicknese, LLP
56 Perimeter Center East
Suite 450
Atlanta, Georgia 30346

As to Gablers: Janet Gabler
Kenneth Gabler
1203 Tullamore Circle
Chester Springs, Pennsylvania 19425

With a copy to: Sidney P. Wright, Esq.
Smith, Price & Wright, LLP
P.O. Box 69
Rome, Georgia 30162

Initial SHC

The undersigned agree that if, and as often as this Note is placed in the hands of an attorney for collection, the undersigned shall pay to the holder an amount equal to fifteen percent (15%) of the outstanding principal balance and interest as attorney's fees, together with all court costs and other expenses paid by such holder.

And each of us, whether maker, endorser, guarantor, or surety, hereby severally (i) waives and renounces, for himself and family, any and all homestead and exemption rights either of us, or the family of either of us, may have under or by virtue of the Constitution or laws of Georgia, or any other State, or the United States, as against this debt or any renewal thereof; and (ii) jointly and severally grants, conveys, transfers and assigns to the holder hereof all of the undersigned's right, title and interest in and to said exemption rights and the proceeds thereof as further security for the payment of the indebtedness secured by said Loan Documents, and do hereby direct any trustee in bankruptcy having possession of such homestead or exemption to deliver to the holder hereof a sufficient amount of property or money set apart as exempt to pay the indebtedness evidenced hereby, or any renewal or modification thereof.

The undersigned and all endorsers, sureties and guarantors of this Note do severally waive presentment for payment, demand, protest and notice of non-payment, or dishonor and of protest, and of the exercise of any option hereunder or under the Loan Documents.

Whenever reference is made herein to the "the undersigned," "Makers," "Gablers," or "holder," such reference shall be deemed to refer to and include the heirs, executors, legal representatives, successors and assigns thereof, the same as if in each case expressed, it being expressly agreed that the rights and obligations of all parties named herein or liable hereunder shall inure to the benefit of and be binding upon such parties and their respective heirs, executors, legal representatives, successors and assigns.

This Note has been negotiated, executed, sealed and delivered in Rome, Georgia, and it is the intention of Makers and the Gablers that this Note be construed, governed and enforced in every respect in accordance with the substantive laws of the State of Georgia, and Makers hereby consent to the jurisdiction of the federal and state courts of Georgia for the resolution of any matters relating to this Note.

The remedies of the holders hereof as provided herein, or in the Loan Documents, or at law or in equity shall be cumulative and concurrent, and may be pursued singly, successively, or together at the sole discretion of the holder hereof, and may be exercised as often as occasion therefor shall occur; and the failure to exercise any such right or remedy shall in no event be construed as a waiver or release thereof. This Note may not be modified or terminated orally but only by agreement or discharge in writing and signed by the Makers and the party who is the owner or holder of this Note at the time endorsement of any waiver, modification or discharge is

Initial *SHC*

- 4 -

sought.  All of the rights, privileges and obligations hereof shall inure to the benefit of and bind the respective successors and assigns of the parties hereto.

The obligation of the undersigned to make or cause to be made the payments required hereunder shall be absolute and unconditional.  The undersigned shall pay or cause to be paid without abatement, diminution, postponement or deduction (whether for taxes or otherwise) regardless of any cause or circumstance whatsoever, including, without limitation, any defense, set-off, recoupment or counterclaim which the undersigned may have or assert against the holder hereof.

If any installment or other payment due hereunder, or under the other Loan Documents, is not paid within five (5) days after the due date thereof, a "late charge" in the amount equal to five percent (5%) of any such charge shall be assessed, which shall be due at the time of payment of the next succeeding installment.  Commencing on the date of any Event of Default under this Note or the Loan Documents, the undersigned further promises to pay, on each date that a payment on this Note is due, and regardless of whether or not there has been an acceleration of the indebtedness evidenced hereby as set forth herein, interest on the outstanding principal balance of this Note at an interest rate equal to 150% of the interest rate which would be in effect hereunder absent such Event of Default on the outstanding principal balance of this Note from the date of such Event of Default through the date of cure thereof, such default interest being due and payable together with and in the same manner as interest as hereinabove provided; provided that any such interest which has accrued shall be paid at the time of and as a condition precedent to the curing of any Event of Default.

It is the intention of the undersigned and the holder to conform strictly to the usury laws now or hereafter in force, and any interest payable hereunder shall be subject to reduction to the amount not in excess of the maximum non-usurious amount allowed under the applicable usury laws as now or hereafter construed by the courts having jurisdiction over such matters.  In the event the maturity of this Note is accelerated by reason of any provision of this Note or by reason of an election by the holder hereof resulting from an Event of Default (or an event permitting acceleration) under the Loan Documents, voluntary prepayment by the undersigned, or otherwise, then earned interest may never include more than the maximum amount permitted by law, computed from the dates of each advance of loan proceeds hereunder until payment, and any interest in excess of the maximum amount permitted by law shall be canceled automatically and, if theretofore paid, shall at the option of the holder hereof either be rebated to the undersigned or credited on the principal amount of this Note or if all principal has been repaid, then the excess shall be rebated to the undersigned.

TIME IS OF THE ESSENCE WITH RESPECT TO THIS NOTE.

Initial SHC

IN WITNESS WHEREOF, the undersigned have caused this Note executed, sealed, and delivered by Makers the day and year first above written.


SHANNON VIDEO, INC.

By: _____

CHARLES T. CRATON, III, President

Attest: _____

SUSAN CRATON, Secretary


[CORPORATE SEAL]


HIGH FIVE INVESTMENTS, LLC

_____ (Seal)

SUSAN CRATON, its sole Member


Initial SHC

- 6 -

## COMMERCIAL SECURITY AGREEMENT

THIS COMMERICAL SECURITY AGREEMENT, dated this _10 th_ day of December, 2009 by and between SHANNON VIDEO, INC., a Georgia Corporation (hereinafter "Grantor"), of 5561 New Calhoun Highway, Rome, Floyd County, Georgia and JANET GABLER and KENNETH GABLER, of 1203 Tullamore Circle, Chester Springs, Pennsylvania 19425:

### W I T N E S S E T H:

WHEREAS, Grantor, HIGH FIVE INVESTMENTS, LLC, a Georgia limited liability company (hereinafter "High Five"), SUSAN CRATON and CHARLES T. CRATON, III (hereinafter collectively "Craton") and Gabler have entered into a certain Stock/Membership Unit Redemption Agreement dated December ____, 2009, wherein Grantor and High Five have agreed to purchase and redeem from Gabler all of Gabler's shares of common stock of Grantor and all of Gabler's units of membership interests in High Five (hereinafter the "Stock Agreement"); and

WHEREAS, pursuant to the terms of the Stock Agreement, Grantor and High Five have financed part of the purchase price, as evidenced by a certain Promissory Note to Gabler in the amount of Four Hundred Fifty Thousand and No/100 ($450,000.00) dollars (hereinafter the "Note"); and

WHEREAS, Gabler is willing to enter into the Stock Agreement and the transactions contemplated thereby only if Grantor makes and delivers this Agreement in favor of Gabler as additional security for the due and punctual payment in full of all principal, interest and all other amounts due under the Note and the performance of Grantor's, High Five's and Craton's obligations under the Stock Agreement; and

WHEREAS, it is in the best interests of Grantor to have stable and consistent ownership, control and management of the company and the transactions contemplated by the Stock Agreement are in the best interests of Grantor;

NOW, THEREFORE, in consideration of the promises contained herein, Ten and No/100 ($10.00) Dollars in hand paid at or before the execution of this Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

DEFINITIONS. The following words shall have the following meanings when used in this Agreement. Terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. All references to dollar amounts shall mean amounts in lawful money of the United States of America.

Agreement. The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

Collateral. The word "Collateral" means the following described property of Grantor:

All assets and rights of the Grantor, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof (all of the same being hereinafter called the "Collateral"): all personal and fixture property of every kind and nature including without limitation all goods (including inventory, merchandise, equipment and any accessions thereto), instruments (including promissory notes), documents, accounts (including health-care-insurance receivables), chattel paper (whether tangible or electronic), credit card and check card receipts and receivables, deposit accounts, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), commercial tort claims, securities and all other investment property, supporting obligations, any other contract rights or rights to the payment of money, insurance claims and proceeds, and all general intangibles (including all payment intangibles).

In addition, the word "Collateral" includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and whatever located:

> (a) All accessions, increases, and additions to and all replacements of and substitutions for any property described above.

> (b) All products and produce of any of the property described in this Collateral section.

> (c) All accounts, contracts rights, general intangibles, instruments, monies, payments, and other rights arising out of a sale, lease, or other disposition of any of the property described in this Collateral sections.

> (d) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section.

> (e) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all the Grantors right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

<u>Event of Default.</u> The words "Event of Default" mean and include any of the Events of Default set forth below in the sections titled "Events of Default".

<u>Grantor.</u> The word "Grantor" means SHANNON VIDEO, INC., its successors and assigns

<u>Indebtedness.</u> The word "Indebtedness" means the indebtedness evidenced by the Note, including all principal and interest, together with all other indebtedness and costs and expenses for which Grantor and High Five are responsible under the Note, whether recovery upon such indebtedness may be or hereafter may

2

become barred by an statute of limitations; and whether such indebtedness may be or hereafter may become otherwise unenforceable.

**Gabler.** The word "Gabler" means JANET GABLER and KENNETH GABLER, their successors and assigns.

**Related Documents.** The words "Related Documents" mean and include without limitation all promissory notes, security deeds, loan agreements, guaranties, security agreements, stock pledge agreements, and all other instruments, agreements and documents, by and between Gabler, Craton, Grantor and HIGH FIVE, whether now or hereafter existing, executed in connection with the Indebtedness.

OBLIGATIONS OF GRANTOR. Grantor warrants and covenants to Gabler as follows:

**Organization.** Grantor is a corporation which is duly organized, validly existing, and in good standing under the laws of the State of Georgia.

**Authorization.** The execution, delivery, and performance of this Agreement by Grantor have been duly authorized by all necessary action by Grantor and do not conflict with, result in a violation of, or constitute a default under (a) any provision of its articles of incorporation or organization, or bylaws, or any agreement or other instrument binding upon Grantor or (b) any law, governmental regulation, court decree, or order applicable to Grantor.

**Perfection of Security Interest.** Grantor agrees to the execution and recording of such financing statements in accordance with the terms of the Uniform Commercial Code, and to take whatever other actions are requested by Gabler to perfect and continue Gabler's security interest in the Collateral. Grantor hereby appoints Gabler as its irrevocable attorney-in-fact for the purpose of executing any document necessary to perfect or to continue the security interest granted in this Agreement. Gabler may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor promptly will notify Gabler of any change in Grantor's name including any change to assumed business names of Grantor. **This is a continuing Security Agreement and will continue in effect until the Indebtedness is paid in full.**

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its certificate or articles of incorporation and bylaws do not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, contract rights, chattel paper, or general intangibles, the Collateral is enforceable in accordance with its terms, is genuine, and complies with applicable laws concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral.

3

<u>Removal of Collateral</u>. Grantor shall keep the Collateral (or to the extent the Collateral consists of intangible property such as accounts, the records concerning the Collateral) at Grantor's store at 5561 New Calhoun Highway, Rome, Floyd County, Georgia, or at such other locations as Gabler may consent to in writing. Except in the ordinary course of its business, including the sales of merchandise and inventory, Grantor shall not remove the Collateral from its existing locations without the prior written consent of Gabler. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any actions which would require registration of the vehicles outside the State of Georgia, without the prior written consent of Gabler.

<u>Transactions Involving Collateral</u>. Except for merchandise and inventory sold or accounts collected in the ordinary course of Grantor's business, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Gabler. This includes security interest even if junior in right to the security interests granted under this Agreement. Unless waived by Gabler, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Gabler and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Gabler to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Gabler.

<u>Title</u>. Grantor represents and warrants to Gabler that it holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflects the security interest created by this Agreement or to which Gabler has specifically consented. Grantor shall defend Gabler's rights in the Collateral against the claims and demands of all other persons.

<u>Maintenance and Inspection of Collateral.</u> Grantor shall maintain all tangible Collateral in good condition and repair. Grantor will not commit or permit damage to or destruction of the Collateral or any part of the Collateral. Gabler and its designated representatives and agents shall have the right of all reasonable times to examine, inspect, and audit the Collateral wherever located. Grantor shall immediately notify Gabler of all cases involving the return, rejection, repossession, loss or damage of or to any Collateral; of any request for credit or adjustment or of any other dispute arising with respect to the Collateral; and generally of all happenings and events affecting the Collateral or the value or the amount of Collateral.

Taxes, Assessments and Liens. Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Gabler's interest in the Collateral is not jeopardized in Gabler's sole opinion. If the Collateral is subjected

4

to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Gabler, cash, a sufficient corporate surety bond or other security satisfactory to Gabler in an amount adequate to provide for the discharge of the lien plus any interest, costs, reasonable attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Gabler and shall satisfy any final adverse judgment before enforcement against Collateral. Grantor shall name Gabler as additional obligee under any surety bond furnished in the contest proceedings.

<u>Compliance With Governmental Requirements</u>. Grantor shall comply promptly with all laws, ordinances and regulations of all governmental authorities applicable to the production, disposition, or use of the Collateral.

<u>Hazardous Substances.</u> Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any hazardous waste or substance, as those terms are defined in the Comprehensive Environmental Response, Compensations, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 49 U.S.C Section 6901, et seq., or other applicable state or Federal laws, rules, or regulations adopted pursuant to any of the foregoing. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for hazardous wastes and substances. Grantor hereby (a) releases and waives any future claims against Gabler for indemnity or contribution in the event Grantor becomes liable for cleanup or other cases under any such laws, and (b) agrees to indemnify and hold harmless Gabler against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

<u>Maintenance of Casualty Insurance.</u> Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Gabler may require with respect to the Collateral, in form, amounts, coverage's and basis reasonably acceptable to Gabler and issued by a company or companies reasonably acceptable to Gabler. Grantor, upon request of Gabler, will deliver to Gabler from time to time, but not less than annually, policies or certificates of insurance in form satisfactory to Gabler, naming Gabler as an additional insured pursuant to this Agreement, including stipulations that coverage's will not be cancelled or diminished without at least ten (10) days" prior written notice to Gabler. In connection with all policies covering assets in which Gabler holds or is offered a security interest, Grantor will provide Gabler with such loss payable or other endorsements as Gabler may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Gabler may (but shall not be obligated to) obtain such insurance as Gabler deems appropriate, including if it so chooses "single interest insurance," which will cover only Gabler's interest in the Collateral.

<u>Application of Insurance Proceeds.</u> Grantor shall promptly notify Gabler of any loss or damage to the Collateral. Gabler may make proof of loss if Grantor fails to do so within five (5) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Gabler as part of the Collateral. Gabler shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. Any proceeds which have not been disbursed within three (3) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

<u>Insurance Reports</u> Grantor, shall furnish annually to Gabler reports on each existing policy of insurance showing such information as Gabler may reasonably request including the following: (a) the name of the insurer; (b) the risks insured; (c) the amount of the policy; (d) the property insured: (e) the then current value of the basis of which insurance has been obtained and the manner of determining that value; and (f) the expiration date of the policy.

<u>GRANTOR'S RIGHT TO POSSESSION.</u> Until default, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents. If Gabler at any time has possession of any Collateral, whether before or after an Event of Default, Gabler shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Gabler takes such action for that purpose as Grantor shall request or as Gabler, in Gabler's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not itself be deemed to be a failure to exercise reasonable care. Gabler shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, not to protect, preserve or maintain any security interest given to secure the Collateral.

<u>EXPENDITURES BY GABLER.</u> If not discharged or paid when due, Gabler may (but shall not be obligated to) discharge or pay any amounts required to be discharged or paid by Grantor under this Agreement, including without limitation all taxes, liens, security interests, encumbrances, and other claims, at any time levied or placed on the Collateral. All such expenditures incurred or paid by Gabler for such purposes will then bear interest at the rate charged under the Note unless payment of interest at the rate would be contrary to applicable law, in which event such expenses shall bear interest at the highest rate permitted by applicable law from the date incurred or paid by Gabler to the date of repayment by Grantor. All such expenses shall become a part of the Indebtedness and, at Gabler's option, will (a) be payable on demand, (b) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (i) the term of any applicable insurance policy or (ii) the remaining term of the Note, or (c) be treated as a balloon payment which will be due and payable at the Note's maturity. This Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Gabler may be entitled upon the occurrence of an Event of Default.

<u>EVENTS OF DEFAULT.</u> Each of the following shall constitute an Event of Default under this Agreement:

<u>Default by Grantor or High Five</u>. Failure of Grantor or High Five to make any payment when due on the Indebtedness; and any event of default by Grantor or High Five under the Stock Agreement or the Related Documents.

<u>Removal of Collateral.</u> Removal of the Collateral from Grantor's address without the prior written consent of Gabler, except only sales of merchandise or inventory made in the ordinary course of business at Grantor's store in Floyd County, Georgia.

<u>Other Defaults</u>. Failure of Grantor to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or in any other agreement between Gabler and Grantor.

<u>False Statements</u>. Any warranty, representation or statement made or furnished to Gabler by or on behalf of Grantor under this Agreement is false or misleading in any material respect, either now or at the time made or furnished.

<u>Defective Collateralization</u>. This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral documents to create a valid and perfected security interest or lien) at any time and for any reason.

<u>Abandonment</u>. Pledgor's abandoning, deserting, or vacating Pledgor's place of business in Floyd County, Georgia, or the failure of Pledgor to be open for business, during regular business hours, for more than five (5) consecutive business days. This provision shall not apply to any failure of Pledgor to be open for business as a result of an act of God, war, civil insurrection, civil unrest, weather event, fire, flood, or other casualty; provided, however, such closures shall not extend for more than ten (10) consecutive business days or such longer time as reasonably required to effect repairs and restoration of Pledgor's premises, such period not to exceed six (6) months.

<u>Violation of Non-Competition Agreement</u>. Any violation by Craton of that certain Non-Competition Agreement executed by Craton in accordance with the Stock Agreement, or any act or action taken by Craton to have such Non-Competition Agreement declared void, invalid or unenforceable.

<u>Insolvency.</u> The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor. Upon the filing of a voluntary or involuntary bankruptcy petition, Grantor consents to the entry of an instanter order in favor of Gabler Lifting the Automatic Stay in accordance with 11 U.S.C. Section 362.

<u>Creditor Proceedings.</u> Commencement of foreclosure, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor against the Collateral or any other collateral securing the Indebtedness.

<u>Insecurity.</u> Gabler, in good faith, deems itself insecure.

RIGHTS AND REMEDIES ON DEFAULT. If an Event of Default occurs under this Agreement, at any time thereafter, Gabler shall have all the rights of a secured party under the Georgia Uniform Commercial Code. In addition and without limitation, Gabler may exercise any one or more of the following rights and remedies:

Accelerate Indebtedness. Gabler may declare the entire Indebtedness, including any prepayment penalty which Craton would be required to pay, immediately due and payable, without notice.

Assemble Collateral. Gabler may require Grantor to deliver to Gabler all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Gabler may require Grantor to assemble the Collateral and make it available to Gabler at a place to be designated by Gabler. Gabler also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Gabler may take such other goods, provided that Gabler makes reasonable efforts to return them to Grantor after repossession.

Sell the Collateral. Gabler shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in its own name or that of Grantor. Gabler may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Gabler will give Grantor reasonable notice of the time after which any private sale or any other intended disposition of the Collateral is to be made. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate unless payment of interest at that rate would be contrary to applicable law, in which event such expenses shall bear interest at the highest rate permitted by applicable law from date of expenditure until repaid.

Appoint Receiver. To the extent permitted by applicable law, Gabler shall have the following rights and remedies regarding the appointment of a receiver: (a) Gabler may have a receiver appointed as a matter of right, (b) the receiver may be an employee of Gabler and may serve without bond, and (c) all fees of the receiver and his or her attorney shall become part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate unless payment of interest at that rate would be contrary to applicable law, in which event such expenses shall bear interest at the highest rate permitted by applicable law from date of expenditure until repaid.

Collect Revenues, Apply Accounts. Gabler, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Gabler may at any time in its discretion transfer any Collateral into its own name or that of its nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Gabler may determine. Insofar as the

8

Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, chooses in action, or similar property, Gabler may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Gabler may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Gabler may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Gabler may notify account debtors and obligors on any Collateral to make payments directly to Gabler.

Obtain Deficiency. If Gabler chooses to sell any or all of the Collateral, Gabler may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Gabler after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even it the transaction described in this subsection is a sale of accounts or chattel paper.

Other Rights and Remedies. Gabler shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Gabler shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

Cumulative Remedies. All of Gabler's rights and remedies, whether evidenced by this Agreement or the Related Documents or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Gabler to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Gabler's right to declare a default and to exercise its remedies.

MISCELLANEOUS PROVISIONS. The following miscellaneous provisions are a part of this Agreement:

Amendments. This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration, modification or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration, modification or amendment.

Applicable Law. This Agreement has been delivered to Gabler and accepted by Gabler in the State of Georgia. It there is a lawsuit, Grantor agrees upon Gabler's request to submit to the jurisdiction of the Superior Court of Floyd County, Georgia. This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia.

Attorneys' Fees; Expenses. Grantor agrees to pay upon demand all of Gabler's costs and expenses, including reasonable attorneys' fees and legal expenses incurred in connection with the enforcement of this Agreement. Gabler may pay

someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Gabler's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (and including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

<u>Caption Headings.</u> Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

<u>Construction, No Presumption</u>. This Pledge Agreement shall be construed as effecting the intent of the parties as set forth herein.  The rule of <u>contra proferentum</u> shall not apply to the interpretation of this Agreement, and no presumption shall arise, either in favor of, or against any party from the drafting of this Pledge Agreement.

<u>Notices.</u> All notices required to be given under this Agreement shall be given in writing and shall be effective when actually delivered or when deposited in the United States mail, first class, postage prepaid, addressed to the party to whom the notice is to be given at the address shown below. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Gabler informed at all times of Grantor's current address(es).  Notices as to:

| | |
|---|---|
| Grantor: | Shannon Video, Inc.<br>P.O. Box 1366<br>Rome, Georgia  30162-1366<br>Attention:  Susan Craton &<br>Charles T. Craton, III |
| With a copy to: | John G. Haubenreich, Esq.<br>Seacrest, Karesh, Tate & Bicknese, LLP<br>56 Perimeter Center East<br>Suite 450<br>Atlanta, Georgia 30346 |
| Gabler: | Janet Gabler<br>Kenneth Gabler<br>1203 Tullamore Circle<br>Chester Springs, Pennsylvania  19425 |
| With a copy to: | Sidney P. Wright, Esq.<br>Smith, Price & Wright, LLP<br>P.O. Box 69<br>Rome, Georgia  30162 |

<u>Power of Attorney</u>. Grantor hereby appoints Gabler as its true and lawful attorney-in-fact, irrevocably, with full power of substitution to do the following:

(a) to demand, collect, receive, receipt for, sue and recover all sums of money or other property which may now or hereafter become due, owing or payable from the Collateral; (b) to execute, sign and endorse any and all claims, instruments, receipts, checks, drafts or warrants issued in payment for the Collateral; (c) to settle or compromise any and all claims arising under the Collateral, and, in the place and stead of Grantor, to execute and deliver its release and settlement for the claim; (d) to file any claim or claims or to take any action or institute or take part in any proceedings, either in its own name or in the name of Grantor, or otherwise, which in the discretion of Gabler may seem to be necessary or advisable; and (e) to file such financing statement or statements pursuant to the Georgia Uniform Commercial Code, including any amendments, extensions and continuations to financing statements. This power is given as security for the Indebtedness, and the authority hereby conferred is and shall be irrevocable and shall remain in full force and effect until renounced by Gabler.

Preference Payments. Any monies Gabler pays because of an asserted preference claim in Borrower's bankruptcy will become a part of the Indebtedness and, at Gabler's option, shall be payable by Borrower as provided above in the "EXPENDITURES BY GABLER" paragraph.

Severability. If a court of competent jurisdiction finds any provision of this Agreement to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, it the offending provision cannot be so modified, it shall be stricken and all other provisions of this Agreement in all other respects shall remain valid and enforceable.

Successor Interests. Subject to the limitations set forth above on transfer of the Collateral this Agreement shall be the benefit of the parties, their successors and assigns.

No Waiver. Gabler shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Gabler. No delay or omission on the part of Gabler in exercising any right shall operate as a waiver of such right or any other right. A waiver by Gabler of a provision of this Agreement shall not prejudice or constitute a waiver of Gabler's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Gabler, nor any course of dealing between Gabler and Grantor, shall constitute a waiver of any of Gabler's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Gabler is required under this Agreement, the granting of such consent by Gabler in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Gabler.

Counterparts. This Agreement may be executed in one or more counterparts, all of which, when taken together, shall be considered one and the same agreement, and this Agreement shall become effective when one or more counterparts have

been signed by each of the parties and delivered to the other parties.

**GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF
THIS COMMERCIAL SECURITY AGREEMENT, AND GRANTOR AGREES TO
ITS TERMS AS OF THE DATE AND YEAR FIRST WRITTEN ABOVE.**

Sworn to and subscribed
before me this 10 day of
December, 2009.

**SHANNON VIDEO, INC.**, Grantor

By: _____ (Seal)
CHARLES T. CRATON, III, President

By: _____ (Seal)
SUSAN CRATON, Secretary

Notary Public, Floyd County
My Commission expires: 4-27-2012

Sworn to and subscribed
Before me this ____ day of
December, 2009.

_____ (Seal)
JANET GABLER

_____ (Seal)
KENNETH GABLER

_____
Notary Public,
My commission expires: _____

been signed by each of the parties and delivered to the other parties.

**GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT, AND GRANTOR AGREES TO ITS TERMS AS OF THE DATE AND YEAR FIRST WRITTEN ABOVE.**

Sworn to and subscribed
before me this _____ day of
December, 2009.

**SHANNON VIDEO, INC.,** Grantor

By:_____(Seal)
      CHARLES T. CRATON, III, President

_____
Notary Public, Floyd County
My commission expires: _____

By:_____(Seal)
      SUSAN CRATON, Secretary

Sworn to and subscribed
Before me this _10_ day of
December, 2009.

_____(Seal)
JANET GABLER

_____
Notary Public,
My commission expires:_____

_____(Seal)
KENNETH GABLER

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Tina M. Jacobsen, Notary Public
West Whiteland Twp., Chester County
My Commission Expires June 6, 2013
Member, Pennsylvania Association of Notaries

12

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

Sidney P. Wright

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

SIDNEY P. WRIGHT, P.C.
SMITH, PRICE & WRIGHT, LLP
P.O. Box 69
Rome, Georgia 30162-0069

FILE NO. 057-10-95

TIME: 10:00

DATE: 1-22-10

*Diane Winter* DEP CLERK

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| SHANNON VIDEO, INC. | | | | | |

| OR | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P.O. Box 1366 | Rome | GA | 30162-1366 | USA |

| 1d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | corporation | Georgia | | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|

| OR | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|

| OR | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|---|---|
| | Gabler | Janet and Kenneth | | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1203 Tullamore Circle | Chester Springs | PA | 19425 | USA |

4. This FINANCING STATEMENT covers the following collateral:

All assets and rights of the Debtor d/b/a "Entice" or "Entice Couples Boutique" located at 5561 New Calhoun Highway, Rome, Floyd County, Georgia, or wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof (all of the same being hereinafter called the "Collateral"): all personal and fixture property of every kind and nature including without limitation all goods (including inventory, merchandise, equipment and any accessions thereto), instruments (including promissory notes), documents, accounts (including health-care-insurance receivables), chattel paper (whether tangible or electronic), credit card and check card receipts and receivables, deposit accounts, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), commercial tort claims, securities and all other investment property, supporting obligations, any other contract rights or rights to the payment of money, insurance claims and proceeds, and all general intangibles (including all payment intangibles). In addition, the word "Collateral" includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and whatever located: (a) All accessions, increases, and additions to and all replacements of and substitutions for any property described above. (b) All products and produce of any of the property described in this Collateral section. (c) All accounts, contracts rights, general intangibles, instruments, monies, payments, and other rights arising out of a sale, lease, or other disposition of any of the property described in this Collateral sections. (d) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section. (e) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all the Debtors right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

| 5. ALTERNATIVE DESIGNATION [if applicable] | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. | ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
|---|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA

**FILING OFFICE COPY** — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

FORM SHOULD BE TYPEWRITTEN OR COMPUTER GENERATED

EXHIBIT "2"

East Coast Loan Documents

## PERSONAL GUARANTY AGREEMENT AND PROMISSORYNOTE

Date: February 7, 2012

FOR VALUE RECEIVED, now and in the future, in consideration of the extension of terms of credit the undersigned, Shannon Video, Inc. (dba Entice Couples Boutique), a Georgia corporation with a mailing address of POB 1366, Rome, GA 30162 ("Customer"), and Charles Thomas Craton, III, an individual with an address of 27 Pear St. Rome, GA 30161 and Susan H. Craton, an individual with an address of 27 Pear St Rome, GA 30161 (each a "Guarantor" and collectively the "Guarantors") hereby promises to pay to the order of East Coast News Corp, International Video Distributors, LLC and its affiliates (collectively, "ECN"), maintaining offices at 59 Lake Drive, Hightstown, NJ 08520, and solidly binds, unconditionally and absolutely, and guarantee (a) the prompt and full payment when due, as indicated in the terms below, of (i) all sums now due or hereinafter to become due to ECN, its successors and assigns, under the terms of any agreements, invoices, notes, and/or contracts now existing or hereafter entered into by and between ECN and any and all of the following: a retail store owned or operated by Customer and/or Guarantors, (ii) any and all costs and expenses, including but not limited to third party management of fees, collection costs, and reasonable attorney's fees as above described or in connection with the collection of same or the enforcement of this Agreement to collect the same, and (iii) any and all renewals, extensions, modifications, or rearrangements of the indebtedness, liabilities, obligations, costs, and fees; and (b) the performance by Customer of all the terms, conditions, and provisions to be performed by Customer under said agreements, invoices, notes, and/or contracts between ECN and the Customer and/or Guarantors whether now existing or hereafter arising.   It shall not be necessary for ECN, in order to enforce payment by Customer, first to institute suit or exhaust its remedies against its related entity form, other guarantors, third parties, or any security liable to pay the debts of the Customer and/or Guarantors to ECN, including any and all rights pursuant to any statutes, or join the Customer, other guarantors, or any others liable for payment of any indebtedness of Customer and/or Guarantors to ECN in any action seeking to enforce this

Agreement.

1.    **INTEREST RATE AND TERMS.**

  A.  Interest on the present agreed-upon principal balance of $41,661.86 shall be 5.0% per month with a total term of 60 months.  There shall be a balloon payment at the end of the 60th month of the remaining principal; which shall be $19,464.09 if no pre-payment is made during the term.

  B.  Interest shall be at the rate of 1.5% per month (APR of 18%) for all late payments, which shall be added to any amount then due.  In the event the interest exceeds that applicable, by law, the highest rate permitted by law shall be applied to overdue balances.

  C.  Customer hereby agrees to make 60 total monthly payments of $500.00; consisting of principal and interest.  Any future balances (if applicable and permitted by ECN) shall require additional monthly payments on a pre-paid basis.  Payments on the principal, with interest, are due on the 1st day of each month until the entire then outstanding balance is fully repaid. The first payment shall be due March 1, 2012. Notwithstanding the foregoing or anything to the contrary, in no event shall Customer be permitted in excess of 61 months to repay the then entire outstanding balance. Any amounts due and outstanding as of April 1, 2017 shall be paid immediately.

  D.  In addition to the payments for principal and interest due under this Note, Customer shall continue to make payments, in advance, via "COD" or credit card, for any new orders accepted by ECN, in ECN's sole and absolute discretion.

2.    **APPLICATION OF PAYMENTS.**

  Each payment shall be applied first to any outstanding penalty, then to interest, then to reduce principal.

3.    **SECURITY.**

Each Guarantor hereby acknowledges that all of its assets, personal and real property shall be pledged as collateral for this debt owed ECN until fully paid. Each Guarantor hereby acknowledges that its real property shall be pledged as collateral for this debt owed ECN until fully repaid. Customer hereby acknowledges that its inventory, personal property and real property shall be pledged as collateral for this debt owed ECN until fully paid. ECN is expressly permitted, and shall, file UCC-1s and other financing statements in ECN's sole discretion to effectuate the foregoing. Further, each Guarantor hereby acknowledges that ECN shall be permitted, in ECN's sole discretion, to record liens in all appropriate recording offices against the Guarantor's real property.

4.    **DEFAULT.**

In the event that Customer fails to make timely payments, ECN shall provide Customer five days after written notice of same to cure all delinquencies. In the event such delinquencies are not entirely cured, the full amount of the debt shall be immediately due and payable. In the event that ECN must incur legal costs and/or attorneys' fees in pursuit of its rights pursuant to this Agreement, including payment thereof, it shall be entitled to an award of reasonable costs and attorneys' fees and court costs. Guarantors and Customer agrees that if judgment is entered against them, that Guarantors and Customer gives their permission for ECN, or its agents, to garnish wages, attach liens, and to attach other personal properties owned by Guarantors and Customer as permitted by law.

CROSS DEFAULT. At ECN's sole option, any default in payment or performance of any obligation under any other promissory note, personal guaranty, loan, contract or agreement of Guarantors and/or Customer (or its subsidiary or affiliate, general partner, majority owner or

other related party) with ECN (collectively, the "Obligations"; which shall expressly include, without limitation, the two other Personal Guaranty Agreement and Promissory Note of even date) shall be automatically deemed a default hereunder this Agreement. In the event of such a default, the full amount of the Obligations shall be immediately due and payable to ECN, along with the default rate of interest in accordance with Section 1.b. herein. In the event that ECN must incur legal costs and/or attorneys' fees in pursuit of its rights pursuant to the foregoing, including payment thereof, it shall be entitled to an award of reasonable costs and attorneys' fees and court costs. Each Guarantor and Customer agrees that if judgment is entered against them, that Guarantor and Customer gives their permission for ECN, or its agents, to garnish wages, attach liens, and to attach other personal properties owned by Guarantor and Customer as permitted by law.

5.    **WAIVER.**

Each Guarantor and Customer hereby waives demand, notice, presentment, protest, and demand for payment, notice of dishonor, notice of protest and diligence of collection pursuant to this Agreement. Each Guarantor and Customer further waives all rights to any exemptions, federal or state, including homestead exemption

6.    **PARTIAL INVALIDITY.**

The invalidity or unenforceability of any one or more provisions pursuant to this Agreement shall not render any other provision invalid or unenforceable.

7.    **BINDING EFFECT.**

The covenants, conditions, waivers, releases and agreements contained in this Agreement

shall bind, and the benefits thereof shall inure to, the parties hereto and their respective heirs, executors, administrators, successors and assigns.

8.    **NOTICES.**

All notices and communications under this Agreement shall be in writing and sent to the respective parties at the addresses as above set forth, unless a party changes its address by written notice.

9.    **GOVERNING LAW.**

This Note shall be governed by and construed in accordance with the substantive laws of the State of New Jersey without reference to conflict of laws principles. This Agreement and all collateral matters will be governed by and construed in accordance with New Jersey law, without regard to or application of conflicts of law rules or principles. Any suit arising out of or related to this Agreement will be brought solely in the courts of New Jersey, and the parties hereby expressly consent to the personal jurisdiction thereof and hereby waive all objections to venue therein. The substantially prevailing party in any dispute relating to this Agreement will be entitled to recover associated costs, including the reasonable fees of attorneys and other professionals. The Guarantors and Customer hereby agree to the foregoing valid, binding forum selection clause and acknowledge that personal jurisdiction may be exercised over Guarantors and Customer in New Jersey courts. Notwithstanding the foregoing, ECN, in its sole discretion, may choose to pursue any default in any court in the United States of America.

10.    **ADDITIONAL CONSIDERATION**

This Agreement and the obligations assumed hereunder shall replace and constitute satisfaction of all debt between Customer/Guarantors and ECN, specifically Shannon Video Acct. No. 300380 ($9,444.72) & Acct. No. 121127 ($23,003.10); Coliseum Entertainment, Inc. Acct. No. 308413 ($28,147.16) & Acct. No. 126824 ($5,837.45); Coliseum Entertainment II, Inc. Acct. No.310994 ($9,181.89) & Acct. No. 130301 ($19640.89); and Arrigato, Inc. Acct. No.304737 ($10,790.19) & Acct. No.125274 ($18,880.18).

IN WITNESS WHEREOF, the undersigned, intending to be legally bound, has duly executed and delivered this Note as of the day and year first above written. The undersigned, by its signatures below, represents that it has read and understands this Agreement.

Charles Thomas Craton, III, individually and as guarantor

SSN: 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

By: _Chas T. Craton_                    witness: _____

Susan Craton, III, individually and as guarantor

SSN: 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

By: _Susan H. Craton_                   witness: _____

Coliseum II Entertainment, Inc.

By: _Chas T. Craton_                    witness: _____

Its: _President/CEO_

Notary Acknowledgment:

State of Georgia
County of _Floyd_____

This instrument was acknowledged before me this _1st_ day of _March_, _2012_, by
_Charles Craton_____.

_✓_ Personally Known
____ Produced Identification
Type and # of ID _____

_____
(Signature of Notary)

Notary Public, Floyd County, Georgia
My Commission Expires May 10, 2014

_____
(Name of Notary Typed, Stamped, or Printed)
Notary Public, State of Georgia

Spousal Consent:

I, Susan Craton, the wife of Charles Thomas Craton, III hereby declare that I have read this Promissory Note and this Personal Guaranty and understand the terms and conditions of this Personal Guaranty; and hereby consent to same and will not contest the validity of any enforcement against our joint assets.

_Susan Craton_
Name:
Date: 2/21/2012

Notary Acknowledgment:

State of Georgia
County of Floyd

This instrument was acknowledged before me this 1st day of March , 2012 , by
Charles Craton .

✓ Personally Known
____ Produced Identification
Type and # of ID _____

_____
(Signature of Notary)

Notary Public, Floyd County, Georgia
My Commission Expires May 10, 2014

_____
(Name of Notary Typed, Stamped, or Printed)
Notary Public, State of Georgia

Spousal Consent:

I, Charles Thomas Craton, III, the husband of Susan Craton, hereby declare that I have read this
Promissory Note and this Personal Guaranty and understand the terms and conditions of this Personal
Guaranty; and hereby consent to same and will not contest the validity of any enforcement against our
joint assets.

Name:

Date: 2/21/12

Notary Acknowledgment:

State of Georgia
County of Floyd

This instrument was acknowledged before me this 1st day of March , 2012 , by
Charles Craton .

✓ Personally Known
____ Produced Identification
Type and # of ID _____

(Signature of Notary)

Notary Public, Floyd County, Georgia
My Commission Expires May 10, 2014

_____
(Name of Notary Typed, Stamped, or Printed)
Notary Public, State of Georgia

GSCCCA eFile#: EF_000209003_000018978_057  Received:Monday, October 19, 2011 2:16:51 PM  Page 1 of 1

FILED & RECORDED
Monday, October 17, 2011 12:42:00 PM
File Number: 057-2011-001685
Barbara H. Penson
Floyd County Clerk of Superior Court

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

East Coast News Corp
59 Lake Drive
Hightstown, NJ 08520

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Shannon Video Inc | | | | |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| POB 1366 | Rome | GA | 30162 | USA |

| 1d. TAX ID #:  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | corporation | GA | 0572282 | NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| Craton | Charles | Thomas | | III |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5561 New Calhoun Hwy | Rome | GA | 30165 | USA |

| 2d. TAX ID #:  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| East Coast News Corp | | | | |
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 59 Lake Dr | Hightstown | NJ | 08520 | USA |

4. This FINANCING STATEMENT covers the following collateral:

All of the Debtor's inventory now or at any time as it relates to or arises as a result of, the operation of its business, and all proceeds thereof as it relates to inventory, including, but not limited to, cash, accounts, notes, guaranties, accounts receivable, and all security for payment thereof, now and hereafter existing or arising

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] | | All Debtors | Debtor 1 | Debtor 2 |
| 8. OPTIONAL FILER REFERENCE DATA | | | | | | |

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

EXHIBIT "3"

Budget

**SHANNON VIDEO**
**PROJECTED FINANCIALS**
**JAN-JUNE 2015**

| | Jan 14 | Feb 14 | Mar 14 | Apr 14 | May 14 | Jun 14 | TOTAL |
|---|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | | |
| **Income** | | | | | | | |
| SALES | 31,500.00 | 49,500.00 | 43,200.00 | 36,000.00 | 40,000.00 | 31,500.00 | 231,700.00 |
| COST OF GOODS SOLD | 12,500.00 | 22,000.00 | 19,200.00 | 16,000.00 | 16,000.00 | 14,000.00 | 99,700.00 |
| **Gross Profit** | 19,000.00 | 27,500.00 | 24,000.00 | 20,000.00 | 24,000.00 | 17,500.00 | 132,000.00 |
| **Expense** | | | | | | | |
| RENT | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 21,000.00 |
| PAYROLL EXPENSES | | | | | | | |
| WORKERS COMP | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 900.00 |
| ADP PAYROLL SVC | 195.00 | 195.00 | 195.00 | 195.00 | 195.00 | 195.00 | 1,170.00 |
| EMPL SALARIES | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 60,000.00 |
| PAYROLL TAXES | | | | | | | |
| FEDERAL UNEMPLOYMENT | 35.00 | 35.00 | 35.00 | 35.00 | 35.00 | 35.00 | 210.00 |
| STATE UNEMPLOYMENT | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 60.00 |
| FICA/MEDICARE/SOCIAL SECURITY | 850.00 | 850.00 | 850.00 | 850.00 | 850.00 | 850.00 | 5,100.00 |
| INSURANCE | | | | | | | |
| BUILDING INSURANCE | 0.00 | 1,000.00 | 0.00 | 0.00 | 1,000.00 | 0.00 | 2,000.00 |
| EMP HEALTH INS | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 600.00 |
| ADEQUATE PROTECTION PAYMENTS | | | | | | | |
| ECN NOTE- ADEQUATE PROTECTION PMT | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 3,000.00 |
| GABLER ADEQUATE PROTECTION PMT | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 1,200.00 |
| Total ADEQUATE PROTECTION PMT | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 4,200.00 |
| UTILITIES | | | | | | | |
| ELECTRIC | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 7,200.00 |
| GAS (PROPANE HEAT) | 400.00 | 400.00 | 200.00 | 0.00 | 0.00 | 0.00 | 1,000.00 |
| TELEPHONE & CELL | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 3,000.00 |
| TRASH & RECYCLING | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 300.00 |
| WATER | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 | 180.00 |
| CREDIT CARD FEES | | | | | | | |
| AMEXCO MER STMT | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 120.00 |
| MER CR CARD CHGS | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 2,400.00 |

**SHANNON VIDEO**
**PROJECTED FINANCIALS**
**JAN-JUNE 2015**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| BANK CHARGES | | | | | | | |
| MAINTENANCE FEE | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 | 180.00 |
| LICENSES AND PERMITS | 10.00 | 70.00 | 10.00 | 10.00 | 10.00 | 10.00 | 120.00 |
| ACCOUNTING | | | | | | | |
| CPA FEES- HOUSTON & CO | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 3,000.00 |
| STORE DECORATIONS | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 600.00 |
| ADVERTISING- INTERNET & PRINT MEDIA | 250.00 | 1,500.00 | 200.00 | 200.00 | 200.00 | 200.00 | 2,550.00 |
| ADVERTISING-BILLBOARD | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 3,000.00 |
| AUTO | | | | | | | |
| SERVICE | 150.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 150.00 |
| FUEL | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 600.00 |
| POS SYSTEM | 129.00 | 129.00 | 129.00 | 129.00 | 129.00 | 129.00 | 774.00 |
| Total COMPUTER & TECHNOLOGY | 129.00 | 129.00 | 129.00 | 129.00 | 129.00 | 129.00 | 774.00 |
| EMPLOYEE RELATIONS | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 600.00 |
| FREIGHT & POSTAGE | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 150.00 |
| INTERNET SITE | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 300.00 |
| LAWN & LOT CARE | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 600.00 |
| MEALS & ENTERTAINMENT | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 600.00 |
| PEST CONTROL | 0.00 | 0.00 | 80.00 | 0.00 | 0.00 | 80.00 | 160.00 |
| REPAIRS AND MAINTENANCE | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 1,200.00 |
| SECURITY SYSTEMS | 0.00 | 0.00 | 0.00 | 180.00 | 0.00 | 0.00 | 180.00 |
| OFFICE SUPPLIES | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 1,200.00 |
| TRADE SHOWS | 1,500.00 | 0.00 | 1,500.00 | | 100.00 | 0.00 | 3,100.00 |
| MISC EXPENSES | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 1,200.00 |
| | -3,384.00 | 4,456.00 | 1,936.00 | -464.00 | 2,616.00 | -2,864.00 | 2,296.00 |