UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

In re:  SHANNON VIDEO, INC.,             :
       a Georgia corporation,             :         Chapter 11
                                          :         Case 14- 43141
                                          :
       Debtor.                            :
_____:

DECLARATION OF CHARLES T. CRATON, III, PRESIDENT
OF SHANNON VIDEO, INC. IN SUPPORT OF
DEBTOR'S FIRST DAY PLEADINGS

I, Charles T. Craton, III, hereby state and affirm as follows:

1.     I am the President of Shannon Video, Inc. (the "Debtor"). In my capacity as the Debtor's President, I am familiar with the Debtor's books and records, financial affairs, business and operations.

2.     I have personal knowledge of the matters set forth herein or have otherwise obtained such knowledge from a review of the Debtor's books and records or from the Debtor's management and employees that generally report to me in the ordinary course of the Debtor's businesses.

3.     I am authorized to make the statements set forth herein and submit this Declaration.

**BACKGROUND**

4.     On December 29, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief under title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq. (the "Bankruptcy Code") thereby commencing this chapter 11 case. The Debtor is operating its business and managing its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the

1

Bankruptcy Code.

### A.  The Debtor's Business

5.  The Debtor is a privately held corporation, organized under the laws of the State of Georgia. Debtor currently operates one retail store at 5561 New Calhoun Highway, Rome, Georgia 30165. The Debtor's retail business (the "Business") is a fully-functional going concern that provides services to meet the needs of its customers.

### B.  The Debtor's Pre-Petition Debt Structure

6.  **First Lien Credit Agreement**

On or about December 10, 2009, Debtor executed a Promissory Note in favor of Janet Gabler and Kenneth Gabler in the original principal amount of $450,000.00 (the "Gabler Note")[1]. The Gabler Note is secured, *inter alia,* by that certain Commercial Security Agreement, dated December 10, 2009 (the "Gabler Security Agreement") and that certain Uniform Commercial Code Financing Statement indexed by the Georgia Uniform Superior Courts Clerk's Cooperative in File No. 057-10-95 (the "Gabler Financing Statement") (the Gabler Note, the Gabler Security Agreement and the Gabler Financing Statement are hereinafter collectively referred to as the "Gabler Loan Documents"). The Debtor's obligations to Gabler Bank under the Gabler Note are secured by a first-priority lien on all inventory[2], chattel paper, accounts, equipment and general intangibles of the Debtor (collectively, the "Gabler Collateral") pursuant to the Gabler Loan Documents.  True and correct copies of the Gabler Loan Documents are attached hereto as Exhibit 1.

---

[1] Upon information and belief, the Gabler Note is currently held solely by Janet Gabler Bearoff.
[2] The Debtor believes that Gabler's interest in Debtor's inventory and the proceeds thereof is subordinate to the purchase money security interest of East Coast in inventory sold to the Debtor by East Coast and the proceeds thereof.

2

7.     **Second Lien (and Purchase Money) Credit Agreement**

On or about February 7, 2012, Debtor executed a Personal Guaranty Agreement and Promissory Note in the original principal amount of $41,661.86 (hereinafter referred to as the "East Coast Loan Documents") in favor of East Coast News Corp, International Video Distributors, LLC ("East Coast"). East Coast has caused to be filed that certain Uniform Commercial Code Financing Statement indexed by the Georgia Uniform Superior Courts Clerk's Cooperative in File No. 057-2011-001685 (the "East Coast Financing Statement"). True and correct copies of the East Coast Loan Documents and the East Coast Financing Statement are attached hereto as Exhibit 2. By virtue of the East Coast Loan Documents and the East Coast Financing Statement, East Coast has a second priority security interest in all inventory of the Debtor and the proceeds thereof (collectively, the "East Coast Collateral"). The Debtor believes that East Coast's security interest in inventory sold to the Debtor by East Coast News Corp., and the proceeds thereof, primes the security interest of Gabler in such collateral under state law.

## THE DEBTOR'S FIRST DAY PLEADINGS

8.     To enable the Debtor to continue operating during the pendency of its Chapter 11 Case, the Debtor has requested various forms of exigent relief by means of First Day Pleadings filed contemporaneously with this Declaration. The following First Day Pleadings have been filed by the Debtor:

**Debtor's Application for Order Authorizing the Retention and Employment of Smith Conerly LLP as Bankruptcy Counsel, *Nunc Pro Tune* as of the Petition Date, Pursuant to Bankruptcy Code Sections 327(a) and 1107(a), and Fed. R. Bankr. P. 2014(a) and 2016(a) (the "Smith Conerly Application")**

9.     The Debtor seeks the entry of an order authorizing the employment and retention of Smith Conerly LLP ("Smith Conerly") as the Debtor's bankruptcy counsel in these Chapter

11 Case *nunc pro tunc* to the Petition Date.

10. The Debtor selected Smith Conerly based on the firm's familiarity with the Debtor's corporate history, debt structure, business and litigation matters, and other major operational issues. Additionally, Smith Conerly's attorneys have an existing familiarity and relationship with the Debtor's management as a result of having worked with the Debtor previously both in an attempt to avoid filing bankruptcy and later to prepare the Debtor's bankruptcy filings.

11. Smith Conerly has extensive experience, knowledge and resources in the area of debtors' and creditors' rights. Moreover, Smith Conerly has the ability to commit substantial resources to legal problems on an urgent basis. Under the circumstances, the Debtor has determined that Smith Conerly is particularly well qualified to represent the Debtor in this Chapter 11 Case.

12. I believe that the retention of Smith Conerly, with its knowledge of, and experience with, the Debtor, will assist in the efficient administration of this estate and is, therefore, in the best interests of the Debtor and its estate.

**Debtor's Motion for an Order Authorizing, But Not Requiring (I) Payment of Prepetition Employee Wages and Salaries; (II) Payment of Workers' Compensation Obligations and Insurance Premiums; (III) Payment of Pre-Petition Tax and Other <u>Withholdings to Third-Parties, and (IV) Related Relief</u> (the "Wage Motion")**

13. On the Petition Date, the Debtor employed five (5) full time employees (each an "Employee" and collectively, the "Employees"), four (4) of which are compensated on an hourly basis and one (1) of which is compensated on the basis of a fixed salary. Pursuant to the Wage Motion, the Debtor seeks authority, but not the obligation, to pay Employees' accrued pre-petition wages and salaries that were earned but not yet paid, together with

4

associated withholding and payroll taxes (the "Unpaid Compensation"), in amounts not exceeding the $11,725.00 priority cap established by section 507(a)(4) of the Bankruptcy Code (hereinafter referred to as the "Employee Obligations").

14. The continued and uninterrupted service of their Employees is critical to preserve the viability of a successful reorganization and to maximize the value of the Debtor's estate for their stakeholders. Employee morale is, understandably, low upon a chapter 11 filing. However, it is during this time that Employees' dedication, knowledge and cooperation are especially necessary to the success of the Debtor's Chapter 11 efforts. Accordingly, the Debtor requests that they be authorized to pay the Employee Obligations without disruption.

15. The Debtor's failure to honor the Employee Obligations would cause undue personal hardships for many of the Employees as many will be unable to meet their financial obligations and maintain their personal health and well-being. Such hardships may cause many Employees to seek other employment, possibly causing irreparable disruption and harm to the Debtor's operations.

16. Accordingly, I believe that the relief requested in the Wage Motion is in the best interest of the Debtor and its estate.

**Debtor's Motion for Authority to Use Cash Collateral On An Interim and Ongoing Basis, To Provide Adequate Protection, and For Expedited Hearing on Use of Cash Collateral On An Interim Basis and Adequate Protection**
(the "Cash Collateral Motion")

17. The ability of the Debtor to obtain sufficient working capital and liquidity through the use of cash collateral is vital to the preservation and maintenance of the going concern values of the Debtor. Accordingly, the Debtor has an immediate need to obtain have access to cash collateral in order to, among other things, permit the orderly continuation of the operation of its business, minimize the disruption of its business operations and preserve and maximize the value of the assets of its estate in order to maximize the recovery to all of the Debtor's creditors.

18. I have reviewed each of these First Day Pleadings, including all annexed exhibits to such First Day Pleadings, and I believe that the relief requested therein is critical to the success of the Debtor's Chapter 11 Case and is in the best interest of the Debtor, its estate and creditors.

19. I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Sworn to and subscribed before
me this 30th day of December, 2014.

_____
Notary Public

State of Georgia
County of Carroll

Cathryn E. Sternbridge
Notary Public, Carroll County, Georgia
My Commission Expires Sept. 17, 2017

_____
CHARLES T. CRATON, III

6